UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALAMANCE REGIONAL MEDICAL CENTER<br>1240 Huffman Mill Road<br>Burlington, NC 27215,<br><br>ALBANY MEDICAL CENTER HOSPITAL<br>43 New Scotland Avenue<br>Albany, NY 12208,<br><br>ALBEMARLE HOSPITAL<br>1144 North Road Street<br>Elizabeth City, NC 27909,<br><br>CLIFTON SPRINGS HOSPITAL<br>2 Coulter Road<br>Clifton Springs, NY 14432,<br><br>DUKE UNIVERSITY HEALTH SYSTEM<br>4101 N. Roxborough Rd.<br>Durham, NC 27704,<br><br>LAKELAND HOSPITAL AT NILES &<br>ST. JOSEPH, INC. f/d/b/a LAKELAND<br>MERCY MEMORIAL MEDICAL CENTER<br>1234 Napier Ave.<br>St. Joseph MI 49085,<br><br>MERCY HOSPITAL OF BUFFALO<br>565 Abbott Road<br>Buffalo, NY 14220,<br><br>NEW HANOVER REGIONAL MEDICAL CENTER<br>2131 s. 17th Street<br>Wilmington, NC 28401,<br><br>OUR LADY OF VICTORY HOSPITAL<br>55 Melroy Road<br>Lackawanna, NY 14218, | Civil Action No. _____ |

DM2\1525371.1

| | |
|---|---|
| PARK RIDGE HOSPITAL<br>100 Hospital Drive<br>Hendersonville, NC 28792, | )<br>)<br>)<br>) |
| ROME MEMORIAL HOSPITAL<br>1500 N. James Street<br>Rome, NY 13440, | )<br>)<br>)<br>) |
| SARATOGA COMMUNITY HOSPITAL<br>15000 Gratiot Avenue<br>Detroit, MI 48205, | )<br>)<br>)<br>) |
| SARATOGA HOSPITAL<br>211 Church Street<br>Saratoga Springs, NY 12866, | )<br>)<br>)<br>) |
| SISTERS OF CHARITY HOSPITAL<br>OF BUFFALO<br>2157 Main Street<br>Buffalo, NY 14214, | )<br>)<br>)<br>)<br>) |
| ST. CLARE HOSPITAL<br>600 McClellan Street<br>Schenectady, NY 12304, | )<br>)<br>)<br>) |
| ST. JOHN NORTHEAST COMMUNITY<br>HOSPITAL<br>4777 East Outer Drive<br>Detroit, MI 48234, | )<br>)<br>)<br>)<br>) |
| ST. JOHN'S HOSPITAL AND<br>MEDICAL CENTER<br>28000 Dequindre<br>Warren, MI 48092, | )<br>)<br>)<br>)<br>) |
| ST. MARY'S HOSPITAL<br>427 Guy Park Avenue<br>Amsterdam, NY 12010, | )<br>)<br>)<br>) |
| and | )<br>) |
| STRONG MEMORIAL HOSPITAL<br>601 Elmwood Avenue<br>Rochester, NY 14642, | )<br>)<br>)<br>) |
| Plaintiffs, | ) |

2



|  |  |
|---|---|
| v. | ) |
|  | ) |
| MICHAEL O. LEAVITT, Secretary, | ) |
| Department of Health and Human Services | ) |
| 200 Independence Avenue, S.W. | ) |
| Washington, D.C. 20201, | ) |
|  | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs, by and through their undersigned attorneys, bring this action against defendant, Michael O. Leavitt, in his official capacity as Secretary of the United States Department of Health and Human Services ("HHS"), and state as follows:

1. This action is brought by plaintiff hospitals to obtain judicial review of adverse decisions of the Secretary concerning administrative appeals of plaintiffs from Medicare provider reimbursement determinations. Plaintiffs' reimbursement appeals for certain fiscal percents were brought in group appeals before the Provider Reimbursement Review Board ("PRRB" or "Board"), an administrative tribunal within HHS. The PRRB improperly determined that it did not have jurisdiction over the plaintiffs' appeals and dismissed them from the group appeals. Plaintiffs ask this Court to find the PRRB does have jurisdiction to hear these appeals and remand the appeals to the Secretary for a decision on the merits.

### I.     Jurisdiction and Venue

2. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. ("the Medicare statute"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 et seq.

3. This Court has jurisdiction under 42 U.S.C. § 1395oo(f).

4.  Venue lies in this judicial district under 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1391.

## II. Parties

5.  The plaintiffs in this action are the following acute care hospitals that were certified to, and did, participate in the Medicare program during the period relevant to this action:

    (a)  Alamance Regional Hospital, Medicare Provider No. 34-0070 ("Alamance");

    (b)  Albany Medical Center Hospital, Medicare Provider No. 33-0013 ("Albany");

    (c)  Albemarle Hospital, Medicare Provider No. 34-0109 ("Albemarle");

    (d)  Clifton Springs Hospital, Medicare Provider No. 33-0265 ("Clifton Springs");

    (e)  Duke University Health System, Medicare Provider No. 34-0030 ("Duke");

    (f)  Lakeland Hospital at Niles & St. Joseph, Inc. f/d/b/a Lakeland Mercy Memorial Medical Center, Medicare Provider No. 23-0021 ("Lakeland");

    (g)  Mercy Hospital-Buffalo, Medicare Provider No. 33-0279 ("Mercy Buffalo");

    (h)  New Hanover Hospital, Medicare Provider No. 34-0141 ("New Hanover");

    (i)  Our Lady of Victory Hospital, Medicare Provider No. 33-0095 ("Our Lady");

    (j)  Park Ridge Hospital, Medicare Provider No. 33-0226 ("Park Ridge");

    (k)  Rome Memorial Hospital, Medicare Provider No. 33-0215 ("Rome");

    (l)  Saratoga Community Hospital, Medicare Provider No. 23-0063 ("Saratoga Community");

    (m)  Saratoga Hospital, Medicare Provider No. 33-0222 ("Saratoga NY");

    (n)  Sisters of Charity Hospital, Medicare Provider No. 33-0078 ("Sisters");

    (o)  St. Claire Hospital, Medicare Provider No. 33-0230 ("St. Claire");

(p) St. John Northeast Community Hospital, Medicare Provider No. 23-0065 ("St. John Northeast");

(q) St. John's Hospital, Medicare Provider No. 23-0165 ("St. John's");

(r) St. Mary's Hospital, Medicare Provider No. 33-0275 ("St. Mary's"); and

(s) Strong Memorial Hospital, Medicare Provider No. 33-0285 ("Strong").

6. Michael O. Leavitt is the Secretary of HHS, the officer responsible for the administration of the Medicare statute. The Secretary has delegated responsibility for most of the administration of the Medicare program to the Centers for Medicare & Medicaid Services ("CMS"), an agency within HHS.. Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA"). In this complaint, plaintiffs will refer to the agency as CMS or HCFA, as appropriate, depending on the context.

### III.  General Background Regarding the Medicare Program

7. The Medicare statute establishes a system of health insurance for the aged, the disabled, and individuals afflicted with end-stage renal disease. Under Part A of the Medicare statute, a Medicare beneficiary is entitled to have payment made by the Medicare program on his or her behalf for covered inpatient hospital services provided to him or her by a hospital participating in the Medicare program as a provider of services, subject to certain limitations on the number of benefit days per spell of illness.

8. Pursuant to 42 U.S.C. § 1395cc, each plaintiff entered into a written agreement with the Secretary to provide hospital services to Medicare beneficiaries. At all relevant times, each plaintiff operated a "hospital" as defined in the Medicare statute (42 U.S.C. § 1395x(e)) and was a "provider of services" participating in the Medicare program within the meaning of 42 U.S.C. § 1395x(u) and 42 C.F.R. § 489.2(b)(1).

9.   From the inception of the Medicare program until 1983, the Medicare program reimbursed providers of inpatient hospital services, such as plaintiffs, for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. 42 U.S.C. §§ 1395f(b), 1395x(v)(1)(A).

10.   Effective with cost reporting periods beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals, such as plaintiffs, for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under PPS, hospitals are paid standardized amounts for inpatient stays based on diagnosis-related groups, subject to certain payment adjustments. *Id.*

11.   Payment to providers of services is commonly carried out by Medicare fiscal intermediaries, acting as agents of the Secretary pursuant to contracts with him. 42 U.S.C. § 1395h.

12.   At the close of its fiscal year, a hospital must submit a "cost report" showing both the cost incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare. 42 C.F.R. §§ 413.24 and 413.50. The hospital's intermediary is required to review and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which reflects the Intermediary's final determination of the total Medicare reimbursement due the hospital for the cost reporting period.

### IV.   Procedure for Administrative and Judicial Review

13.   If a hospital is dissatisfied with the intermediary's determination regarding the total due the hospital, the hospital has a right to obtain a hearing before the PRRB by filing an appeal with the Board within 180 days of receiving its NPR. *See* 42 U.S.C. § 1395oo.

DM2\1525371.1

14. A hospital may also request a reopening of its NPR within three years of the date of the hospital's receipt of the NPR. 42 C.F.R. § 405.1885(a). The fiscal intermediary also may initiate a reopening of the NPR. Upon completion of a reopening, the intermediary will issue a revised NPR reflecting the new determination of Medicare reimbursement due the provider. The hospital has a right to obtain a hearing before the Board regarding the adjustments made in the revised NPR by filing an appeal request with the Board within 180 days of receiving the revised NPR. 42 C.F.R. §§ 405.1835, 405.1841(a)(1), and 405.1889.

15. The Board is authorized to make substantive decisions concerning Medicare reimbursement issues and to decide questions relating to its jurisdiction. 42 C.F.R. § 405.1873. A decision of the Board disposing of an appeal on substantive or jurisdictional grounds constitutes a final administrative decision of the Secretary unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877.

16. The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator. A decision of the CMS Administrator to reverse, affirm, or modify the Board's decision constitutes the final administrative decision of the Secretary.

17. A hospital may obtain judicial review of a final administrative decision of the PRRB, including a decision relating to its jurisdiction, by filing an action within 60 days of its receipt of the decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. § 1395oo(f).

## IV. Medicare's Policies Regarding Payment for the Disproportionate Share Hospital Adjustment

18. Under PPS, Medicare's payments to hospitals for inpatient operating costs are based on predetermined, nationally applicable rates, subject to certain payment adjustments. 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412. One of these adjustments, known as the disproportionate share hospital ("DSH") adjustment provides for additional payments to PPS hospitals that serve a disproportionate share of low-income patients. *See* 42 U.S.C. § 1395ww(d)(5)(F).

19. Under 42 U.S.C. § 1395ww(d)(5)(F)(vi), the Secretary is required to make an add-on payment to the standardized case payments for PPS hospitals serving a "significantly disproportionate number of low-income patients." Whether a hospital serves a significantly disproportionate number of low income patients depends on its disproportionate patient percentage, which is computed for a given cost-reporting period based on the sum of two fractions defined in the statute, the hospital's "SSI percentage" and the hospital's "Medicaid percentage."

20. The SSI percentage is to be determined using the following formula prescribed by Congress.

> The fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) *were entitled to benefits under part A* of this title and were entitled to supplemental security income benefits (excluding any State supplementation) under title XVI of this Act, and the denominator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) *were entitled to benefits under part A* of this title.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).

21. The Medicaid percentage is to be calculated using the following formula prescribed by Congress.

8

> The fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who *were not entitled to benefits under part A* of this title, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). In general, the more Medicaid eligible days included in the hospital's Medicaid percentage, the larger its Medicare DSH adjustment will be.

22. Thus, under the statute, the SSI percentage *includes* patients "entitled to benefits under Part A," while the Medicaid percentage *excludes* days for patients "entitled to benefits under part A" from Medicaid eligible days.

23. During plaintiffs' fiscal years at issue, in determining DSH payments, CMS and its intermediaries interpreted and applied "entitled to benefits under part A" differently for the SSI and Medicaid percentages.

24. In determining the SSI percentage, CMS policy was to include only Medicare covered days as days for "patients entitled to benefits under Part A." Noncovered days attributable to Medicare beneficiaries were deemed to be days for which the patients were not "entitled to benefits under Part A," and thus these days were excluded from the SSI percentage.

25. In determining the Medicaid percentage, however, the policy and practice of CMS and its intermediaries were to deem all days attributable to Medicare beneficiaries as days for which the patients were "entitled to benefits under Part A," and thus these days were *also* excluded from the Medicaid percentage.

26. Because of CMS' inconsistent interpretations of this statutory language, certain days for patients eligible for Medicaid and Medicare Part A were excluded from both the SSI and

9

Medicaid percentages, and therefore excluded from the calculation of plaintiffs' DSH adjustments.

V. **Facts Applicable to Plaintiffs**

27. Each of plaintiff hospitals received a revised NPR for the fiscal years identified in the following subparagraphs. In each revised NPR, the intermediary reopened and revised its original determination of the hospital's DSH adjustment. Plaintiff hospitals appealed each of the revised NPRs to the PRRB as indicated below.

    (a) Alamance received a revised NPR dated March 23, 2005, for its Fiscal Year ending December 31, 1998. The revised NPR was appealed on September 14, 2005.

    (b) Albany received a revised NPR dated June 17, 2005 for its Fiscal Year ending December 31, 1995. The revised NPR was appealed on October 24, 2005.

    (c) Albemarle received a revised NPR dated January 18, 2005, for its Fiscal Year ending September 30, 1998. The revised NPR was appealed on July 13, 2005.

    (d) Clifton Springs received a revised NPR dated April 25, 2006, for its Fiscal Year ending December 31, 1998. The revised NPR was appealed on October 13, 2006.

    (e) Duke received a revised NPR dated January 12, 2006 for its Fiscal Year ending June 30, 1997. The revised NPR was appealed on July 10, 2006.

    (f) Lakeland received a revised NPR dated October 29, 2004 for its Fiscal Year ending September 30, 1997. The revised NPR was appealed on April 20, 2005.

    (g) Mercy received a revised NPR for its Fiscal Year ending December 31, 1997 and timely appealed the revised NPR.

(h)  New Hanover received a revised NPR dated September 20, 2004 for its Fiscal Year ending September 30, 1997. The revised NPR was appealed on March 11, 2005.

(i)  Our Lady received a revised NPR dated March 19, 2004 for its Fiscal Year ending December 31, 1997. The revised NPR was appealed on September 13, 2004.

(j)  Park Ridge received a revised NPR dated October 29, 2003 for its Fiscal Year ending December 31, 1997. The revised NPR was appealed on April 24, 2004.

(k)  Rome received a revised NPR dated July 23, 2001 for its Fiscal Year ending December 31, 1995. The revised NPR was appealed on July 30, 2001.

(l)  Rome received a revised NPR dated November 3, 2003 for its Fiscal Year ending December 31, 1996. The revised NPR was appealed on May 14, 2004.

(m)  Saratoga received a revised NPR dated March 19, 2004 for its Fiscal Year ending June 30, 1996. The revised NPR was appealed on September 14, 2004.

(n)  St. John's received a revised NPR dated May 14, 2004 for its Fiscal Year ending June 30, 1996. The revised NPR was appealed on September 14, 2004.

(o)  St. Mary's received a revised NPR dated April 15, 2004 for its Fiscal Year ending December 31, 1996. The revised NPR was appealed on October 7, 2004.

(p)  St. Clare received a revised NPR dated March 19, 2004 for its Fiscal Year ending December 31, 1997. The revised NPR was appealed on September 10, 2004.

(q)  Sisters received a revised NPR dated October 5, 2004 for its Fiscal Year ending December 31, 1997. The revised NPR was appealed on March 2, 2005.

(r)  Saratoga Community received a revised NPR dated October 7, 2004 for its Fiscal Year ending June 30, 1997. The revised NPR was appealed on March 23, 2005.

DM2\1525371.1

(s) Saratoga Community received a revised NPR dated September 16, 2004 for its Fiscal Year ending June 30, 1998. The revised NPR was appealed on March 14, 2005.

(t) St. John Northeast received a revised NPR for its Fiscal Year ending June 30, 1998. The revised NPR was appealed on September 24, 2004.

(u) New Hanover received a revised NPR for its Fiscal Year ending September 30, 1998. The revised NPR was appealed on November 24, 2004.

(v) Sisters received a revised NPR dated February 1, 2005, for its Fiscal Year ending December 31, 1998. The revised NPR was appealed on May 5, 2005.

(w) Strong received a revised NPR dated March 19, 2003 for its Fiscal Year ending December 31, 1995. The revised NPR was appealed on September 11, 2003.

28. In each revised NPR identified in paragraph 27, the intermediary reviewed and revised its determination regarding the number of Medicaid eligible days to be included in the hospital's Medicaid percentage. As part of the review and revision, the intermediary excluded any Medicaid-eligible days attributable to dual eligible patients from the number of Medicaid eligible days included in the hospital's Medicaid percentage.

29. Plaintiffs' appeals of the revised NPRs identified in paragraph 27 were organized under the following group appeals before the PRRB:

(a) PRRB Group Appeal No. 05-0538G, which included:

  (i) Albany's revised NPR for its Fiscal Year ending December 31, 1995,

  (ii) Strong's revised NPR for its Fiscal Year ending December 31, 1995,

  (iii) Rome's a revised NPR for its Fiscal Year ending December 31, 1995.

(b) PRRB Group Appeal No. 05-0539G, which included:

   (i)  Rome's revised NPR for its Fiscal Year ending December 31, 1996,

   (ii)  Saratoga NY's revised NPR for its Fiscal Year ending June 30, 1996,

   (iii)  St. John's revised NPR for its Fiscal Year ending June 30, 1996,

   (iv)  St. Mary's revised NPR for its Fiscal Year ending December 31, 1996.

 (c)  PRRB Group Appeal No. 04-0622G, which included:

   (i)  St. Clare's revised NPR for its Fiscal Year ending December 31, 1997,

   (ii)  Mercy's revised NPR for its Fiscal Year ending December 31, 1997,

   (iii)  Park Ridge's revised NPR for its Fiscal Year ending December 31, 1997.

 (d)  PRRB Group Appeal No.05-1476G, which included:

   (i)  Duke's revised NPR for its Fiscal Year ending June 30, 1997,

   (ii)  Sisters' revised NPR for its Fiscal Year ending December 31, 1997,

   (iii)  Our Lady's revised NPR for its Fiscal Year ending December 31, 1997,

   (iv)  New Hanover's revised NPR for its Fiscal Year ending September 30, 1997,

   (v)  Lakeland's revised NPR for its Fiscal Year ending September 30, 1997,

   (vi)  Saratoga Community's revised NPR for its Fiscal Year ending June 30, 1997.

 (e)  PRRB Group Appeal No. 04-0621G, which included:

   (i)  Saratoga Community's revised NPR for its Fiscal Year ending June 30, 1998,

   (ii)  St. John Northeast's revised NPR for its Fiscal Year ending June 30, 1998,

   (iii)  New Hanover's revised NPR for its Fiscal Year ending September 30, 1998.

  (f)  PRRB Group Appeal No. 05-2116G, which included:

    (i)  Alamance's revised NPR for its Fiscal Year ending December 31, 1998,

    (ii)  Albemarle's revised NPR for its Fiscal Year ending September 30, 1998,

    (iii)  Sisters' revised NPR for its Fiscal Year ending December 31, 1998,

    (iv)  Clifton Springs' revised NPR for its Fiscal Year ending December 31, 1998.

30.  In each of the group appeals identified in paragraph 29, the PRRB held a hearing on March 27, 2008 regarding the substantive issue regarding the exclusion of Medicaid eligible days attributable to dual eligible patients from the Medicaid percentage.

31.  Subsequent to the hearing on the substantive issue on March 27, 2008, the PRRB issued jurisdictional decisions in each of the group appeals dated May 28, 2008, holding that it lacked jurisdiction over plaintiffs' fiscal years identified in paragraph 29. The jurisdictional decisions dismissed these fiscal years from the pending group appeals. Plaintiffs received the PRRB's jurisdictional decisions on or after June 2, 2008.

32.  For fiscal years remaining in the pending group appeals, the PRRB has not yet issued a decision on the substantive issue regarding the exclusion of Medicaid eligible days attributable to dual eligible patients from the Medicaid percentage.

33.  Plaintiffs' PRRB appeals concerned an issue that was addressed in their revised NPRs. Under the statute and regulations, the PRRB had jurisdiction to hear plaintiffs' appeals. 42 C.F.R. §§ 405.1835, 405.1841(a)(1), and 405.1889.

34.  The PRRB's decisions that it lacked jurisdiction over plaintiffs' appeals contesting the total number of Medicaid eligible days to be used in the DSH adjustment are contrary to law, arbitrary and capricious, and lacking in substantial evidence. The decisions are

defective for many reasons, including that they do not follow the Secretary's duly promulgated regulations.

35.    Plaintiffs are entitled to judgment that the PRRB has jurisdiction over their claims because Plaintiff hospitals' revised NPRs addressed their Medicaid percentages and the total number of Medicaid eligible days in those percentage and because the intermediaries' review and determination of the Providers' Medicaid eligible days involved review and adjustment for Medicaid eligible days for dual eligible patients.

## VI.    Requested Relief

WHEREFORE, plaintiffs request:

1.    a declaration that the PRRB's decisions are contrary to law, arbitrary and capricious, and lacking in substantial evidence;

2.    an order requiring that the Secretary order the PRRB to take jurisdiction over plaintiffs' appeals for the fiscal years identified herein and review and render a decision on the merits of plaintiffs' reimbursement claims in those appeals.

3.    legal fees and costs of suit incurred by plaintiffs; and

4.    such other relief as this Court may consider appropriate.

Respectfully submitted,

Dated: August 1, 2008

*Christopher L. Crosswhite*
Christopher L. Crosswhite
D.C. Bar No. 450927
DUANE MORRIS LLP
505 9th Street, NW, Suite 1000
Washington, D.C.  20004
Tel. (202) 776-7846
Fax (202) 776-7801

Joanne B. Erde, P.A.
DUANE MORRIS LLP
201 S. Biscayne Blvd., Suite 300
Miami, FL 33131
Tel. (305) 373-9476

Attorneys for Plaintiff Hospitals

DM2\1525371.1

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS
Alamance Regional Medical Center, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Alamance
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Duane Morris, LLP
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
202.776.7800

### DEFENDANTS
Michael O. Leavitt, Secretary,
U.S. Department of Health and Human Services

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

### II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)
- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**● C. Administrative Agency Review**
- ☒ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)  OR  ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. sec. 1395oo(f); action for judicial review under the Medicare Act

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE August 1, 2008   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.